IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

VALENTE M. CAMPBELL,

                Plaintiff,
v.                                                       OPINION and ORDER

ALANA ACKER, LAURA C. SUKOWATY,                        24-cv-538-jdp
and CHARLES DOMBECK,

                Defendants.

---

Plaintiff Valente M. Campbell, proceeding without counsel, is a prisoner at Columbia Correctional Institution. Campbell alleges that prison officials discontinued his anti-seizure medication and left him handcuffed in his cell, leading to him being injured during a seizure. I granted Campbell leave to proceed on claims under the Eighth Amendment to the United States Constitution and under Wisconsin medical negligence law. Dkt. 8. Because the undisputed facts show that defendants did not violate Campbell's rights, I will grant their motion or summary judgment and dismiss the case.

UNDISPUTED FACTS

Campbell did not file a response to defendants' summary judgment motion, so I will accept the proposed findings of fact that defendants filed in support of their motion as undisputed. Fed. R. Civ. P. 56(e)(2). But defendants must still carry their burden to show that summary judgment is appropriate. *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994).

Campbell is currently incarcerated at Columbia Correctional Institution. This case involves medical treatment that Campbell received at several Wisconsin prisons. During the times relevant to their involvement in this lawsuit, defendants Alana Acker, Charles Dombeck,

and Laura Sukowaty were employed by the Wisconsin Department of Corrections. Acker was a health services manager, Charles Dombeck is an advanced practice nurse prescriber, and Laura Sukowaty is a physician.

This case involves a seizure that Campbell suffered in May 2024 and whether defendants properly treated his seizure disorder beforehand. So I will begin with a discussion of Campbell's medical history leading up to the seizure.

Campbell was placed in DOC custody at Dodge Correctional Institution in 2017. His incoming transfer paperwork included no record of seizure activity. On an intake form, Campbell stated that he suffered "random from time to time" seizure activity. Dkt. 30-1, at 4. But no new diagnoses were added to his "problem list."

In November 2017, Campbell was transferred to the Wisconsin Secure Program Facility. A screening form was filled out: under "Significant Medical Illnesses," Seizure Disorder was not checked, while other medical issues such as asthma were checked. Nonetheless, later that month Campbell met with a provider who discussed an existing diagnosis of seizure disorder and placed a referral to see a neurologist.

In February 2018, the outside provider ordered various diagnostic tests and a prescription for Keppra, an anti-seizure medication. Campbell refused to go to his scheduled electroencephalogram and MRI. Starting in June 2018, Campbell often started to refuse to take his Keppra. For instance, in October and November 2018, Campbell took that medication only about five days a month.

In November 2019, Campbell submitted a health services request stating that his medication was making him sleepy and hungry. Two DOC doctors recommended not

discontinuing the medication; his dosage time was switched to the evening so that his side effects would take place while he was sleeping.

In February 2021, Campbell was transferred to New Lisbon Correctional Institution. Shortly thereafter, Campbell wrote to medical staff, asking that his Keppra be "take[n] off the cart," *id*. at 112, and stating, "If you're not going to take my meds off after I have signed multiple refusal slips then can you please make the med as needed so I don't have to keep walking up to HSU every night to sign refusal slips? I'm not going to never take the meds," *id.* at 111. Campbell's Keppra was then discontinued.

In March 2021, Campbell was seen by his outside neurologist for a one-year follow-up. The neurologist noted "no provoked events and rare occurrence with only 4 lifelong events." *Id.* at 100. Campbell agreed to restart Keppra.

The day after the appointment, Campbell sent medical staff a request stating, "Please do not start new meds that were order[ed] because I will not take them. I [would] like to sign another refusal please thank you." Id. at 110. Because of Campbell's continued non-compliance with treatment, Dr. Karl Hoffmann discontinued Campbell's Keppra prescription and did not schedule Campbell for a follow-up appointment with the neurologist.

In June 2021, Campbell requested that his seizure-related medical restriction for low-bunk/low-tier housing assignments be removed. He stated, "I do not need or want it anymore. *Id.* at 114. That restriction was renewed despite his request.

In November 2021, Campbell was transferred to Waupun Correctional Institution. In June 2022, Campbell was seen by defendant Dombeck regarding his seizures and asthma. In reviewing Campbell's medical history, Dombeck noted that Campbell's last seizure was in 2018, and that Campbell had repeatedly stated that he had only experienced four seizures in

3

his lifetime. Dombeck also noted that Campbell had not taken his anti-seizure medication since 2020. Because Campbell hadn't had seizure activity while off medication, Dombeck canceled Campbell's low bunk/low tier restriction.

In August 2022, Campbell wrote to medical staff "with concerns" about Dombeck having removed the low bunk/low tier restriction. Campbell stated that he "tr[ies] to shy away from meds and take a more therapeutic approach to manag[ing his] seizures," that his seizure disorder "does not render [him] to be epileptic 24/7 365," and that he only has seizures when he is "extremely stressed." *Id.* at 107. Dombeck responded that "[c]ontrolled chronic conditions do not meet qualification," and he forwarded the request for review by an advanced care provider. *Id.* Defendants do not explain whether the restriction was reinstated.

In December 2023, Campbell was transferred to Columbia Correctional Institution.

On May 13, 2024, Campbell had an unwitnessed seizure after being left handcuffed in his cell. Campbell was assessed by a nurse, who contacted defendant Dr. Sukowaty. Sukowaty ordered an EKG and three days of acetaminophen and ice packs.

About a week later, Campbell was seen by a nurse. Campbell complained of head pain, requested additional acetaminophen, and asked if he would be put back on his Keppra. The nurse submitted a request for a long-term order of acetaminophen.

A couple of days after that, Campbell wrote to defendant Health Services Unit Manager Acker, stating that defendant Dombeck "stopped my meds because he said I haven't had a seizure in a while" and that staff was ignoring his requests for medication or a neurology appointment. *Id.* at 105. Acker forwarded Campbell's correspondence to an advanced care provider. The triaging nurse responded to Campbell saying that an advanced care provider had been contacted.

4

The triaging nurse also contacted defendant Dr. Sukowaty about Campbell's request, stating that Campbell "has a charted history of a few lifetime seizures apparently well controlled without medication" and attaching unidentified medical records. *Id.* at 38. After reviewing Campbell's medical history, Sukowaty did not place an order for Keppra because "an unwitnessed seizure caused by a specific triggering event is not medically indicated for long-term anti-seizure medication." Dkt. 27, ¶ 52.

Campbell filed this lawsuit in August 2024.

In November 2024, another DOC doctor re-ordered Keppra for Campbell for a period of six months. Over that six-month period, Campbell refused to take his Keppra 55 times. In April 2025, Sukowaty renewed Campbell's prescription for a year, and upping the dosage. That order currently remains in place.

ANALYSIS

I granted Campbell leave to proceed on the following claims:

- Eighth Amendment and Wisconsin-law medical negligence claims for damages against defendant Dombeck for discontinuing Campbell's anti-seizure medication without reason, exposing him to the risk of harm from seizures like the May 2024 incident.

- Eighth Amendment and Wisconsin-law medical negligence claims for damages against defendant Acker for ignoring the risk posed by the discontinuation of his medication and doing nothing to intervene, even after the incident.

- An Eighth Amendment claim for injunctive relief against defendant Sukowaty for refusing to re-prescribe anti-seizure medication even after Campbell's injury.

The Eighth Amendment prohibits prison officials from acting with conscious disregard toward prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one

5

for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). A medical need is serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371–73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm, *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

A defendant "consciously disregards" an inmate's need when the defendant knows of and disregards "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

Campbell's medical negligence claims against Dombeck and Acker have the following elements: (1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages. *Paul v. Skemp*, 2001 WI 42, ¶ 17.

### A. Defendant Dombeck

I will start with Campbell's claims against defendant Nurse Prescriber Dombeck, whom Campbell alleges discontinued his anti-seizure medication without a valid reason, leading to the May 2024 incident in which Campbell was injured during a seizure. But the undisputed facts show that Dombeck wasn't the medical professional who discontinued Campbell's Keppra. (Dombeck did cancel his low-bunk restriction, but Campbell doesn't bring a claim about that decision.) So I will dismiss Campbell's claims against Dombeck.

### B. Defendant Acker

Campbell alleges that defendant HSU Manager Acker was aware of the risk posed by the discontinuation of his medication but did nothing to intervene, even after the incident. But as the health services manager, Acker wasn't Campbell's direct medical provider, couldn't prescribe Keppra, and couldn't overrule an advanced care provider's decision. When Campbell raised the issue of his discontinued medication in a health services request to her, Acker directed the request to his advanced care provider, which does not suggest conscious disregard or negligence. Rather, it shows that Acker relied on Campbell's advanced care providers to treat him, which she is entitled to do. *See Pulera v. Sarzant*, 966 F.3d 540, 552–53 (7th Cir. 2020) (generally nurses may rely on a doctor's medical judgment). I will dismiss Campbell's claims against Acker.

### C. Defendant Sukowaty

I granted Campbell leave to proceed on a claim for injunctive relief against defendant Dr. Sukowaty. Defendants argue that Campbell's request for an injunction is moot because he was re-prescribed Keppra after he filed this lawsuit. I disagree. "[T]he mere cessation of the conduct sought to be enjoined does not moot a suit to enjoin the conduct, lest dismissal of the suit leave the defendant free to resume the conduct the next day." *Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 947 (7th Cir. 2006). So the fact that Campbell was re-prescribed Keppra isn't enough to moot her claims.

But Campbell isn't entitled to an injunction because nothing in the record suggests that Sukowaty or any other DOC provider violated his Eighth Amendment rights regarding treatment for his seizures. Immediately after the May 2024 seizure, Sukowaty ordered an EKG and pain relievers, exhibiting care for Campbell's condition rather than conscious disregard.

7

She later decided not to re-prescribe Campbell's Keppra, but only after concluding that that medication wasn't indicated for Campbell's seizure caused by the stress of the handcuffing incident. That legitimate medical judgment cannot support an Eighth Amendment claim, even if another doctor later disagreed with that judgment and re-prescribed Keppra. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation.").

Even had Campbell brought a claim against Dr. Hoffmann—the doctor who actually discontinued Campbell's Keppra in March 2021—the facts here don't support an Eighth Amendment claim against him: Hoffmann discontinued the medication only after Campbell stated that he wouldn't take the medication, the medical record showed that Campbell often refused to take the medication, and he had a documented history of only a few seizures in his life. *See Jackson v. Matushak*, No. 20-C-1341, 2022 WL 19693712, at *13 (E.D. Wis. May 26, 2022) ("The plaintiff cannot 'engineer' a claim of deliberate indifference out of his refusal to accept reasonable medical treatment."); *aff'd sub nom. Jackson v. Peters*, No. 22-2514, 2023 WL 3151110 (7th Cir. Apr. 28, 2023). A reasonable jury could conclude only that Hoffmann's discontinuation of Campbell's Keppra was a legitimate medical judgment. Without an underlying violation of his Eighth Amendment rights, Campbell can't bring a claim for injunctive relief. So I will dismiss his claim against Sukowaty.[1]

---

[1] Defendants also contend that they are entitled to qualified immunity. Because I am dismissing Campbell's Eighth Amendment claims on the merits, I need not consider defendants' qualified immunity argument.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 25, is GRANTED.

2. The clerk of court is directed to enter judgment and close the case.

Entered January 16, 2026.

                                      BY THE COURT:

                                      /s/

                                      _____
                                      JAMES D. PETERSON
                                      District Judge